UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| IN RE: BIOMET M2a MAGNUM HIP | ) | | |
|---|---|---|---|
| IMPLANT PRODUCTS LIABILITY | ) | CAUSE NOS. | 3:14-CV-737 |
| LITIGATION (MDL 2391) | ) | | 3:14-CV-1434 |
| | ) | | 3:14-CV-1505 |

OPINION AND ORDER

The plaintiffs' motions to enforce the Master Settlement Agreement are before me. The defendants (collectively referred to as "Biomet") objected, and I heard oral arguments on March 17, 2015. For the following reasons, I deny the plaintiffs' motions.

I. BACKGROUND

The following facts are derived from the exhibits attached to plaintiffs' reply brief [Doc. No. 32-1 and 32-2] (emails between plaintiffs' counsel, Ilyas Sayeg, and Biomet's lead counsel, John Winter ) and Mr. Winter's affidavit [Doc. No. 30-1].

In November 2014, Biomet exercised its right under ¶ 3(b) of the Settlement Agreement to dispute the amount of compensation payable to these plaintiffs — George Holmes, Griseth DeJesus, and Rita Taranto — and to proceed to mediation. Mediation had yet to occur when, on December 1, Mr. Winter emailed plaintiffs' counsel, Mr. Sayeg, and (1) made an offer to settle Mr. DeJesus's and Ms. Taranto's claims, (2) gave an estimate of what he thought Mr. Holmes's claim

was worth, and (3) told Mr. Sayeg that one or more of the cases could proceed to mediation if the plaintiffs wished.

No evidence was presented as to whether Mr. DeJesus or Ms. Taranto formally accepted Biomet's offers to settle, or, if so, when that might have occurred. But Mr. Sayeg emailed Mr. Winter on December 22, 2014 and made a "counter offer" to settle Mr. Holmes' claim, to which Mr. Winter replied: "Ok to resolve at $[redacted]K."

During the course of these negotiations, Mr. Sayeg and/or his firm and Mr. Winter were engaged in an ongoing discovery dispute involving a motion to compel production of documents in an unrelated Biomet case pending in a Florida circuit court, *Zaremba v. Orthopedics, Inc, et al*, Case No. 2014-CA-01932-NC. On January 6, Mr. Winter notified Mr. Sayeg that "either he accepted the rules approved by this Court regarding the format of documents already produced or Biomet was going to revoke any settlement offers previously discussed." Mr. Sayeg declined. Mr. Winter revoked the offers to settle these cases.

The next day (January 7), Mr. Sayeg reportedly sent "fully signed and executed settlement agreements" to Biomet on behalf of DeJesus, Taranto, and Holmes, "accept[ing] the terms of the MSA [Master Settlement Agreement]."

On January 11, Mr. Winter sent Mr. Sayeg a letter reiterating that Biomet's offers to settle had been revoked on January 6.

2

II.  DISCUSSION

The plaintiffs moved to enforce the terms of the Master Settlement Agreement, contending that it is "binding" and that they're "eligible plaintiffs" within the meaning of the Master Settlement Agreement, so Biomet is required to settle their claims; that Biomet doesn't have any authority under the Master Settlement Agreement to revoke the settlement offers; and that Biomet shouldn't be allowed to punish these plaintiffs simply because they're represented by the same law firm that represents the plaintiff in *Zaremba*. The plaintiffs' arguments aren't supported by any legal authority and are inconsistent with key provisions in the Master Settlement Agreement.

Paragraph 3 of the Master Settlement Agreement gives both the plaintiffs and Biomet the right to dispute the base compensation amounts to which specific plaintiffs would otherwise have been entitled to under ¶ 2, and required mediation in those cases.  It provides in relevant part:

> **3. <u>Mediation of Cases</u>**: The cases selected by Plaintiffs and Biomet for resolution pursuant to this paragraph will be referred to as the "mediation cases."  Cases to be mediated are as follows:
>
> ***
>
> (b)   <u>Contested Cases</u>.  Biomet also believes that there is good cause to reduce the amounts to be paid on cases that qualify for payments, pursuant to Paragraph 2 of this Settlement Agreement. *Good cause for Biomet to seek to reduce the amount to be paid to a specific plaintiff, include, but are not limited to, evidence of trauma, infection or other objective explanations for a premature failure of the hip system with the absence of evidence of a MoM injury.* By May 30, 2014, Biomet shall provide a

3

>    list of its contested cases from all filed cases with materially completed fact sheets as of December 31, 2013. By September 19, 2014, Biomet shall provide a list of its contested cases from all filed cases with materially completed fact sheets served between January 1, 2014 and June 13, 2014
>
> (c) <u>Mediation Process.</u> The cases selected by Plaintiffs and Biomet for resolution pursuant to this paragraph, *will be mediated with the assistance of Thomas Rutter of ADR Solutions in Philadelphia*, who will act as the mediator to work with the Parties to resolve any of the mediation cases, pursuant to this paragraph. Beginning in October 2014, the mediator will schedule, in consultation with the PEC and Biomet, firm-by-firm mediations to take place in Philadelphia. The Parties will confer in good faith, attempting to agree on values for all mediated cases. Any mediated case not resolved by [March 2, 2015], subject to the aggregate settlement percentage requirements set forth in Paragraph 5, will be remanded, pursuant to an appropriate order of the Court.

(Emphasis added). [Doc. No. 1317-1].

The plaintiffs' claims fall within the "contested cases" category, so they were subject to mediation.

The Master Settlement Agreement gave Biomet the right to contest any case if it "believe[d] that there [was] good cause to reduce the amounts to be paid [under ¶ 2 of the MSA]", and did so within the time limits provided in ¶ 3(b). The plaintiffs' don't challenge the timeliness of Biomet's actions, but contend that they qualified for payments under ¶ 2 and that Biomet lacked good cause to reduce the amounts they were to be paid. But what constitutes "good cause" for purposes of this provision is subjective rather than objective, and isn't limited to the examples

4

set out in ¶ 3(b). If the plaintiffs disputed Biomet's reasons for seeking a reduction, their remedy under the Master Settlement Agreement was to proceed to mediation. They chose not to do so.

Express language in the Master Settlement Agreement supports Biomet's assertion that the settlement agreements weren't finalized before they were revoked on January 6, 2015:

> 11. <u>Releases</u>.  Each Plaintiff who receives a payment from Biomet pursuant to this Settlement Agreement, will execute a Release and Settlement Agreement and Covenant Not to Sue ("Release") in a form mutually agreed to by the Parties...."

[Doc. No. 1317-1].

Mr. Sayeg indicated in his motion and at the hearing that he mailed settlement agreements to Biomet on January 7, 2015 evidencing the plaintiffs' acceptance of the Master Settlement Agreement's terms, but Biomet had already revoked its offers and agreements to settle by that time. There's no evidence to suggest that the Release and Settlement Agreements contemplated under ¶ 11 were executed "in a form mutually agreed to by the Parties" before Biomet revoked the offers and/or agreements.

### III.  CONCLUSION

Under the terms of the Master Settlement Agreement, the plaintiffs had two options once Biomet revoked the offers to settle:  mediate their claims or proceed to trial on the merits. While the March 2 deadline for mediation has passed,

Biomet indicated at the hearing that it would be willing to mediate these cases. I encourage the plaintiffs to avail themselves of that opportunity.

For the foregoing reasons, the plaintiffs' motions to enforce the Master Settlement Agreement [Doc. No. 29 in 3:14cv737][Doc. No. 35 in 3:14cv1434][Doc. No. 34 in 3:14cv1505] are DENIED.

SO ORDERED.

ENTERED:   March 23, 2015

                                          /s/ Robert L. Miller, Jr.
                                      Judge, United States District Court